# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LUCAS ZARAGOSA-TAPIA,**

    **Petitioner,**

    v.

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:12-CV-781**
**CRIM. NO. 2:11-CR-191**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Kemp**

## OPINION AND ORDER

Petitioner, Lucas Zaragosa-Tapia, filed this motion to vacate under 28 U.S.C. §2255 after he was sentenced to 46 months of imprisonment and two years of supervised release for illegally re-entering the United States after having been removed. Petitioner pleaded guilty to that charge. For the following reasons, the Court **DENIES** the motion.

## I. PROCEDURAL HISTORY

On July 29, 2011, the United States filed a one-count information charging petitioner with illegally re-entering the United States on June 13, 2011. The information alleged that petitioner had previously been deported from the United States and had subsequently re-entered the country without first obtaining the permission of the Attorney General of the United States or the Secretary of the Department of Homeland Security to do so. The information also alleged that petitioner had been deported as an aggravated felon back in 2001. As a result, he was charged with violating both 8 U.S.C. §1326(a) and §1326(b)(2). *See* Doc. 11.

On the same day the information was filed, the parties filed a plea agreement with

the Court. Under the terms of the plea agreement, petitioner agreed to plead guilty to the charge contained in the information and to waive any right to contest his deportation. Petitioner and his counsel, Diane Menashe, signed the agreement on July 22, 2011. *See* Doc. 12.

The Court held a plea hearing on August 23, 2011. After engaging in the standard plea colloquy, the Court accepted petitioner's guilty plea. The Court sentenced him on October 25, 2011. The transcript of the sentencing hearing shows that neither petitioner nor the United States had any objection to the presentence investigation report, which calculated the adjusted base offense level as 21 and placed petitioner in criminal history category III. This calculation produced a guideline range of 46-57 months, and the Court chose to sentence petitioner at the low end of the guideline range. In doing so, the Court acknowledged but rejected an argument from petitioner's counsel that the Court should depart downward to a sentence of 33 months based upon the fact that this was petitioner's first illegal re-entry, and that the drug conviction which led to his prior deportation dated back to 1991. However, the Court gave some weight to that argument when it sentenced petitioner to only 46 months. *See* Doc. 24. Petitioner was advised of his right to appeal but elected not to do so.

On July 25, 2012, petitioner filed a motion for relief from judgment, citing to "28 U.S.C. §60(b)." He argued that the Court failed to recognize its sentencing discretion in light of the unavailability of "fast-track" programs in this District. *See* Doc. 25. After the United States filed an opposing memorandum, the Court denied the motion because

2

Fed.R.Civ.P. 60(b) does not apply to criminal cases. *See* Doc. 28. Petitioner then filed this motion under 28 U.S.C. §2255, along with a supporting memorandum. The United States has opposed the motion, and petitioner has filed a reply. *See* Docs. 29, 30, 32 and 33.

## II. THE MOTION TO VACATE

Petitioner asserts the following claims in his motion, which the Court recites here just as he pleads them:

> **GROUND ONE - INEFFECTIVE ASSISTANCE OF COUNSEL - FAST-TRACK DOWNWARD DEPARTURE WAS APPLICABLE.**
>
> **GROUND TWO - PROSECUTORIAL MISCONDUCT AND DUE PROCESS VIOLATION.**
>
> **GROUND THREE - ABUSE OF DISCRETION AND FAILURE TO ACCOUNT FOR MITIGATING FACTORS UNDER §3553 AND U.S.S.G. Amend. 740, 764 and 739 resulting in Sentencing Guidelines ERRORS of OFFENSE LEVEL. This has resulted in Constitutional Violations.**
>
> **LEGAL INNOCENCE: VOLUNTARY STIPULATED REMOVAL WITHOUT JUDICIAL REVIEW BARS THE CONVICTION based on §1326.**

It is the United States' position that grounds two, three and four have been procedurally defaulted because they were not raised on direct appeal. Further, the United States argues that petitioner cannot show cause and prejudice sufficient to excuse the procedural default. The United States also submits that none of the grounds for relief has merit.

## III. PROCEDURAL DEFAULT

Ordinarily, any claim relating to the validity of either a guilty plea or sentence must be raised on direct appeal, or that claim is waived.

> Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

*Bousley v. United States,* 523 U.S. 614, 621 (1998).

Claims which have been defaulted because they were not raised on direct appeal can be considered on their merits when presented in a §2255 petition only if the defendant can show "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). The primary exception to that rule is "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255. " *Massaro v. United States*, 538 U.S. 500, 509 (2003). If a claim has been procedurally defaulted and the petitioner is unable to show "cause and prejudice," the petitioner may still obtain review of the claim if he can demonstrate that, due to constitutional error, the trial court proceedings "'probably resulted in the conviction of one who is actually innocent.'" *See Bousley v. United States, supra,* at 623, *quoting Murray v. Carrier*, 477 U.S. 478, 496 (1986). To make that showing, the petitioner must demonstrate that "'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley, supra*, *quoting Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).

Petitioner's first ground for relief raises a claim of ineffective assistance of counsel. That claim is not procedurally defaulted, and the United States does not argue otherwise.

4

His second and third claims, however, present issues which could have been raised on direct appeal. His fourth claim, which asserts his actual innocence, would, if it had merit, potentially excuse the procedural default of his other claims, so the Court must examine the fourth claim for that purpose. But first it must determine if claims two and three were actually defaulted and if there is cause and prejudice to excuse the default.

It is undisputed that these claims were not raised by way of direct appeal; petitioner did not file an appeal. It is also true that they raise matters which are apparent from the face of the record. In his reply, petitioner argues that the United States' raising of procedural default as a defense is an abuse of discretion; he also asserts that the only way he can raise his due process and sentencing guidelines claims is through a §2255 proceeding, and that the Court's order denying his motion for relief under Rule 60(b) stated as much.

In this case, it is difficult to separate out the cause and prejudice analysis from the analysis of petitioner's claims of ineffective assistance of counsel and actual innocence. All of petitioner's claims center around two fundamental propositions: first, that in one way or another, petitioner should have benefitted from the existence in other districts of the "fast-track" program for defendants convicted of illegal re-entry (most likely by granting him a downward departure and reducing his sentence to somewhere between thirty and thirty-seven months); and, second, that he should not have been convicted of illegal re-entry at all because he was removed under a procedure which did not comport with due process. If these claims are both without merit, there is no basis for excusing any

5

procedural default which might have occurred because petitioner would not have been prejudiced from counsel's failure to raise them or this Court's failure to accept them. The Court will therefore examine these two basic claims on their merits.

## IV. THE FAST-TRACK CLAIM

Petitioner's first and third claims rise or fall on the validity of his claim that he should have benefitted in some way from the existence of the "fast-track" program for illegal re-entry defendants. It is helpful to begin this analysis with a short explanation of the program.

In *United States v. Camacho-Arellano*, 614 F.3d 244, 247-48 (6th Cir. 2010), a case on which petitioner relies heavily, the Court of Appeals, quoting its earlier explanation of the fast-track program in the case of *United States v. Hernandez-Cervantes*, 161 Fed. Appx. 508, 510 (6th Cir. December 23, 2005), said this:

> Fast-tracking arose initially in border areas with large illegal immigration caseloads. Prosecutors sought to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues. Congress approved and set standards for this process in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. 108–21, 117 Stat. 650, which required the United States Sentencing Commission to "promulgate ... a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, § 401(m)(2)(b), 117 Stat. 675. The Sentencing Commission responded by promulgating a new Guideline authorizing a four-level reduction. U.S.S.G. § 5K3.1.

As further explained in *Camacho-Arellano*, this early disposition program - known as "fast-

6

tracking" - was developed in border States but was not limited to those jurisdictions. By the time *Camacho-Arellano* was decided, it had been adopted in non-border States like Nebraska, Utah, and Oregon.

As might be expected, the use and prevalence of this program was creating disparities in sentencing depending upon whether a fast-tracking program had been adopted in the federal judicial district where the defendant was being sentenced. That led defendants in non-fast-track jurisdictions to argue that the court should factor this disparity into the sentencing process in some way. The district court in *Camacho-Arellano* considered this argument but decided that it did not provide a legal basis for a downward departure. The Court of Appeals disagreed, however, concluding that the United States Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007) effectively overruled prior Sixth Circuit precedent (which the district court had followed) holding that a district court lacks "the authority to vary from a guideline on the ground that it rejects a policy underlying it." *Id*. at 248. The case was therefore remanded for resentencing so that the district judge could exercise his discretion to sentence the defendant to a lower sentence than the Guidelines called for, should he, in fact, disagree with the underlying policy behind the sentence calculation based on the factors that motivated Congress to authorize the fast-track program.

Petitioner's basic argument here is that this Court also had the discretion to reduce his sentence to take the sentencing disparity caused by the use of the fast-track program in other districts into account. He asserts that his attorney's failure to make that argument

7

(and the Court's failure to consider a lighter sentence based on the disparity caused by the absence of a fast-track program in the Southern District of Ohio at the time petitioner was sentenced) violated his rights to the effective assistance of counsel and to due process.

> The standard for reviewing a claim of ineffective assistance of counsel is twofold:
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because Petitioner must satisfy both prongs of the *Strickland* test, should the Court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

In its extremely brief (four pages, counting the certificate of service) response, the United States characterizes petitioner's ineffective assistance of counsel claim as alleging "that his attorney rendered ineffective assistance by failing to argue for his participation

in the district's fast-track program for illegal reentry cases." *See* Answer by the United States, Doc. 32, at 2. Based on that description of the claim, the United States concludes that because the program was not adopted in this District until 2012, counsel could not have been ineffective for failing to ask for petitioner's participation in that program the year before. The United States also points out that had the program been in existence in 2011, petitioner would not have qualified for it due to his prior drug conviction.

If one reads only the motion to vacate, the United States' interpretation of petitioner's claim is somewhat plausible, because petitioner does seem to suggest that the Court's adoption of a fast-track program should be applied retroactively to his case. He does make vague references to counsel's ineffectiveness for failing to ask for a downward departure, however. In his reply, he makes this argument much more clearly and relies extensively on *Camacho-Arellano.* The United States did not ask for leave to file an additional memorandum, so it has not responded to this argument. Because the United States does not appear to have correctly understood petitioner's argument, at least as phrased in the reply, its response to the motion to vacate is not directly on point. Petitioner's argument, as the Court construes it, is not that he was or is entitled to participate in a fast-track program; rather, he contends that his attorney simply failed to make a specific argument for a downward departure that, under *Camacho-Arellano,* she should have made. In this context, the United States' assertion that petitioner would not have been eligible for fast-track treatment due to his prior drug conviction is also misdirected. The defendant in *Camacho-Arellano* also had a prior drug conviction which

9

added sixteen points to his base offense level, but the Court of Appeals did not treat that fact as disqualifying him from being able to argue for a downward departure based upon fast-track sentencing disparities.

*Camacho-Arellano* was decided more than a year before petitioner was sentenced. The record is silent about whether defense counsel knew of the decision or whether she made a conscious or strategic decision not to argue for the type of downward departure described in it (although it is difficult to see any disadvantage to petitioner which might have resulted had she made the argument). The United States could have asked counsel to explain her thought process since the filing of a motion under §2255 is a waiver of the attorney-client privilege with respect to issues raised in the motion, *see In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). However, the United States did not submit an affidavit or declaration from petitioner's counsel responding to the claims of ineffective assistance, presumably because of the way in which it understood the argument being made in the motion to vacate. Under these circumstances, the record is not complete enough for the Court to make a fully-informed decision about whether counsel's performance fell below an objective standard of reasonableness.

Proving deficient performance is, however, only half the battle. In order to obtain relief, petitioner must also prove prejudice. He can do so by showing that "there is a reasonable probability that [his] ... sentence would have been different but for his trial counsel's errors." *Newman v. United States*, 162 F.3d 1162, *3 (6th Cir. Aug. 19, 1998)(Table), citing *United States v. Boone*, 62 F.3d 323, 327 (10th cir. 1995). In other words, given the

colloquy which did occur at the time of sentencing, and the arguments counsel made in support of a sentence below the bottom end of the guideline range, the key question is whether, had this additional argument been presented, there is a reasonable probability that the Court would have imposed a sentence of less than 46 months.

Here, the undersigned District Judge was the sentencing judge, and is in the best position to determine if this omitted argument would likely have influenced the Court to impose a different sentence. It would not have done so. The sentencing transcript bears this out. The Court engaged in an extended dialogue with counsel concerning her arguments for a lower sentence - effectively the sentence which petitioner claims he should have or would have gotten had the Court been aware that it could look at disparities created by the adoption of a fast-track program in other judicial districts. The Court then explained in great detail its reasons for believing the 46-month sentence to be appropriate, including the fact that the offense was a serious one, that a substantial sentence was needed in order to deter aggravated felons from returning to the United States, and that others who appeared before this Court charged with the same offense received longer sentences. As the Court observed, "anything less than 57 months in this case is a credit to your attorney ... and the arguments she has made." *Transcript of Sentencing Hearing*, Doc. 24, at 14.

As another court faced with a similar argument observed, "[t]he sentencing transcript in this case does not show that there was a 'reasonable probability' that [defendant]'s sentence would have been 'significantly less harsh' had his trial counsel acted differently." *United States v. Skinner*, 2009 WL 2030427, *8 (S.D. Miss. July 14, 2009),

*quoting Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)(abrogated by *Glover v. United States*, 531 U.S. 198 (2001). Using *Glover's* standard, which focuses on whether *any* additional prison time (and not just a significant amount of time) resulted from the alleged sentencing error, does not change the result; the amount of time the Court sentenced petitioner to would have been exactly the same. Therefore, any error, if one was committed, in counsel's failure to make the argument about sentences imposed in other fast-track jurisdictions is simply harmless; the sentence petitioner received is "the term the Court would have imposed" even had the argument been made, and the alleged "error made no difference to the outcome of the case ...." *See Roseboro v. United States,* 882 F.Supp.2d 566, 578 (S.D.N.Y. 2012). Due to his inability to show that any claimed deficiency in counsel's performance prejudiced him in any way, petitioner has not satisfied the second prong of the *Strickland* test and is not entitled to relief on his first and third claims.

## V. THE DUE PROCESS/ACTUAL INNOCENCE CLAIM

Petitioner's other claim, presented in his second and fourth grounds for relief, is that he was removed from the United States as part of a procedure which violated due process. As a result, he claims that his conviction for violating §§1326(a) and (b)(2) is invalid on due process grounds and that he is actually innocent of the crime. The Court finds, however, that this claim may not be raised on collateral review because it was waived by petitioner's guilty plea, and that it provides no basis for relief.

A guilty plea constitutes a break in the chain of events leading up to it. *Tollett v. Henderson*, 411 U.S. 258 (1973). Federal habeas corpus review of claims raised by a

petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266. A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him. *McMann v. Richardson*, 397 U.S. 759 (1970); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Here, petitioner had the chance to plead not guilty and test the government's case against him, or to move to dismiss the indictment on grounds that his prior removal did not comport with due process and was invalid under the criteria listed in §1326(d). That statutory subsection allows a defendant in a case brought under §§1326(a) or (b) to contest the validity of his prior removal on grounds that "(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair," so long as the defendant either properly exhausted his administrative remedies or was excused from having done so. *Id.* Such challenges have been routinely entertained by courts in this Circuit. *See, e.g., United States v. Martinez-Rocha*, 337 F.3d 566 (6th Cir. 2003) (upholding district court's denial of motion to dismiss filed under §1326(d)); *United States v. Zuniga-Guerrero*, 460 F.3d 733 (6th Cir. 2006)(same); *United States v. Tilley*, 2003 WL 25729209 (N.D. Ohio Sept. 15, 2003)(granting motion to dismiss indictment based on defendant's establishment of grounds under §1326(d)). Had he made such a motion, and had he been unsuccessful, he could have entered a conditional guilty plea and preserved the issue for appeal. *See*

Fed.R.Crim.P. 11(a)(2)("**Conditional Plea**. With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion); *see also United States v. Garcia-Martinez,* 228 F.3d 956 (9th Cir. 2000). He did not. Consequently, his unconditional guilty plea - which was properly entered under Rule 11 and which fully comported with due process - waived this argument both for purposes of appeal and for purposes of collateral review under §2255. *See United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)(defendant's "failure to enter a conditional guilty plea prevents him from raising his arguments against his conviction upon appeal"); *see also United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002) (stating, in the context of an appeal from the denial of a motion to vacate filed under §2255, that "[a] voluntary and unconditional guilty plea generally waives any non-jurisdictional claims that arose before the plea").

The Court also rejects petitioner's claim of factual innocence as an independent ground for granting relief. Petitioner does not dispute that he was actually removed from the United States prior to his illegal re-entry in 2011. At most, he claims a procedural defect in the removal proceedings, but the existence of such a defect - even had he proved all of the elements required under §3126(d) to invalidate it, which he has not - is not the same as proof that no crime was ever committed. Moreover, petitioner's guilty plea "serves as an admission that he is not innocent of the crime[] charged." *Luster v. United States*, 168 F.3d 913, 916 (6th cir. 1999). Further, a claim of actual innocence is not an independent basis for

14

affording relief in collateral proceedings brought in a non-capital case. *See Herrera v. Collins*, 506 U.S. 3990, 400 (1993); *Gibbs v. United States*, 655 F.3d 473 (6th Cir. 2011) . Thus, petitioner is not entitled to relief on his second and fourth claims.

## VI. ORDER

For the reasons set forth above, petitioner's motion to vacate, correct or set aside sentence (Doc. 83) is **DENIED**.


    /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**